UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDDIE CARTER, ET AL.                    CIVIL ACTION


VERSUS                                  NO: 11-1401


ST. JOHN BAPTIST PARISH                 SECTION: R(2)
SHERIFF'S OFFICE, ET AL.


## ORDER AND REASONS

Before the Court is defendants James M. LeBlanc and Michael Scarborough's motion to dismiss.[1]  The Eleventh Amendment prohibits the plaintiffs from suing LeBlanc and Scarborough in their official capacities and plaintiffs do not state a claim against LeBlanc in his individual capacity.  Accordingly, the Court GRANTS defendants' motion in part.  Because plaintiffs state a claim against Scarborough in his individual capacity, the Court DENIES defendants' motion to dismiss the claims against Scarborough in his individual capacity.


I.    BACKGROUND

This case arises from an incident that took place at the home of the plaintiffs, Eddie and Connie Carter, which is located at 3009 Essex Lane in La Place, Louisiana.  On the night of June 14, 2010, several St. John the Baptist Sheriff's Officers and

---

[1]    R. Doc. 27.

Louisiana Department of Public Safety and Corrections ("LDPSC")
officers knocked on the door of the Carters' home.  Plaintiffs
allege that Mr. Carter could not see who was at the door when he
looked out the window because the light was dim.  Mr. Carter
asserts that when he opened the door, he was "overrun" by
officers who, with guns drawn, ordered him to step aside.
Plaintiffs assert that they did not consent to the officers'
entry, and the officers did not present a search warrant.
Plaintiffs contend that the officers "took control of the
Carter's home", searching the entire house and the garage.  At
the time of this incident, the Carter's son, Erin Carter, was a
convicted offender on parole with the LDPSC.  Plaintiffs allege
that while the officers conducted the search, they explained that
they were there to apprehend Erin Carter for a parole violation.
Plaintiffs assert that the officers scolded the Carters for
bailing their son out of jail.  Plaintiffs allege that they did
not post bail for their son, Erin Carter, that he does not live
with them, and that he lives at 1510 Delta Street in Reserve,
Louisiana.  Further, plaintiffs contend that LDPSC knew that Erin
Carter did not live in plaintiffs' home because the LDPSC
monitored him through an electronic device at his address in
Reserve, Louisiana.  Plaintiffs contend that since the LDPSC
began the electronic monitoring of Erin Carter, it conducted all
visitations and inspections at Erin Carter's home in Reserve,

2

Louisiana.  Plaintiffs assert that they were traumatized by police behavior and went to the hospital following the incident because Mrs. Carter suffered shortness of breath.  Mr. Carter was released early the next morning, and Mrs. Carter remained in the hospital for several days.

On June 13, 2011, plaintiffs filed a complaint in federal court under 42 U.S.C. § 1983 alleging violations of their constitutional rights under the Fourth Amendment.[2]  Plaintiffs complaint names the following persons in their individual and official capacities as defendants: St. John the Baptist Parish Sheriff's Office, Sheriff Wayne Jones, four unknown officers of the St. John the Baptist Sheriff's Office, James M. LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections, Officer Michael Scarborough of the Louisiana Department of Public Safety and Corrections, and four unknown officers of the Louisiana Department of Public Safety and Corrections.  Plaintiffs allege that they suffered physical, mental and emotional harm as a result of the actions of these defendants and seek compensatory and punitive damages.  Defendants James LeBlanc and Michael Scarborough now move to dismiss the charges against them under Federal Rules of Civil

---

[2]     R. Doc. 1.

Procedure 12(b)(1)(4) and (6).[3]  Plaintiffs oppose the motion to dismiss.[4]

## II.  STANDARD

Fed. R. Civ. P. 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim.  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, subject matter jurisdiction must be decided first because "the court must find jurisdiction before determining the validity of a claim." *Moron v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A court's dismissal of a case for lack of subject

---

[3]     R. Doc. 27.

[4]     R. Doc. 28.

matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true "legal conclusions; mere 'labels'; 'threadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Morgan v. Swanson*, 2011 WL 4470233, at *6 (5th Cir. Sept. 27, 2011) (quoting *Iqbal*, 129 S.Ct. at 1949). A legally sufficient complaint must establish more than a "sheer

possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed. At the pleading stage, the Court lacks jurisdiction to resolve disputed factual issues or consider whether such disputes might entitle the defendants to qualified immunity. *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 400 (5th Cir. 2002).


**III. DISCUSSION**

Title 42, United States Code, Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a claim

under Section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. *Id*.

Plaintiffs assert that the defendants, in their official and individual capacities, violated plaintiffs' Fourth Amendment right to be free from unlawful searches and seizures and their Fourteenth Amendment rights to due process and equal protection. They seek relief for these violations under Section 1983. Defendants assert that the Court lacks subject matter jurisdiction to hear the claims asserted against them in their official capacities, that the complaint fails to state a claim against LeBlanc in his individual capacity, that they are entitled to qualified immunity for the claims asserted against them in their individual capacities, that the complaint fails to state a claim upon which relief can be granted under state law, and that they are entitled to discretionary immunity provided by La. Rev. Stat. 9:2798.1.

A. *The Eleventh Amendment*

The Eleventh Amendment divests federal courts of jurisdiction to entertain suits directed against states. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Briggs v. Mississippi*, 331 F.3d 499, 502-03 (5th Cir. 2003). Official capacity suits are regarded as another form of

7

claims against the state itself.  *See Brandon v. Holt*, 469 U.S. 464, (1985) ("official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent") (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, the Eleventh Amendment cannot be evaded by suing state officials in their official capacities.  *See Green v. State Bar of Texas*, 27 F.3d 1083, 1087-88 (5th Cir. 1994)(explaining that the Eleventh Amendment "may not be evaded by suing state employees in their official capacity because such an indirect pleading device remains in essence a claim upon the state treasury.").  State officials sued in their official capacities are not 'persons' subject to suit under Section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

A state may voluntarily waive its Eleventh Amendment immunity.  *See Port Auth.*, 495 U.S. at 305-06.  Louisiana, however, has not done so.  LA. REV. STAT. 13:5106(A); *see Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 ("Section 1983 does not abrogate Eleventh Amendment immunity and Louisiana has not waived it") (internal citations omitted).  Further, the Fifth Circuit has held that the Louisiana Department of Public Safety and Corrections is a state entity entitled to the

protections of the Eleventh Amendment.  *Champagne*, 188 F.3d at
313-14 (examining the factors used to determine whether an entity
is covered by a state's Eleventh Amendment immunity and finding
the Louisiana Department of Public Safety and Corrections to be a
covered entity); *Rogers v. Dep't of Corrs.*, 2001 WL 803679, at *1
(5th Cir. Jun. 13, 2001) ("The Louisiana Department of Public
Safety and Corrections is absolutely immune from suit due to the
Eleventh Amendment").  Accordingly, this Court lacks subject
matter jurisdiction to adjudicate claims against LeBlanc and
Scarborough in their official capacities as employees of the
LDPSC.

   *B. Qualified Immunity*

   In a suit against an official in his individual capacity,
the plaintiff must "show that the official, acting under color of
state law, caused the deprivation of a federal right." *Kentucky
v. Graham*, 473 U.S. 159, 166 (1985).  In such a suit, the
official may assert the defense of qualified immunity.   The
doctrine of qualified immunity protects government officials from
civil damages liability when their actions could reasonably have
been believed to be legal. *Iqbal*, 129 S.Ct. at 1949.  Qualified
immunity is "*an immunity from suit* rather than a mere defense to
liability". *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)
(emphasis in original).  Accordingly, it "protects an official
not only against standing trial, but also against incurring the

burdens of such pretrial matters as discovery.  *Langford v. Union Cnty.*, 2002 WL 31415376, at *2 (5th Cir. Oct. 18, 2002).

Qualified immunity shields a state official unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that right was "clearly established" at the time of the challenged conduct. *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (citing *Harlow*, 457 U.S. at 818).  The law must be clearly established because an official is entitled to "'fair warning' that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).  "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  *Id.*  But the Supreme Court instructs that courts "should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009)).  In *Pearson*, the Supreme Court identified situations in which a district court may choose to skip step one of the qualified immunity analysis.  One such situation is "[w]hen qualified immunity is asserted at the pleading stage[.]" *Pearson*, 555 U.S. at 239.  Because that is the situation in this case – qualified immunity asserted at the pleading stage – the

Court will examine whether the law is clearly established before reaching the constitutional question.

The law is clearly established if "at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Al-Kidd*, 131 S.Ct. at 2080 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  It is not necessary for there to be a case directly on point to satisfy the clearly established requirement, "but existing precedent must have placed the constitutional question...beyond debate." *Id.*  "A court must be able to point to controlling authority – or a 'robust consensus of persuasive authority' – that defines the contours of the right in question with a high degree of particularity." *Morgan*, 2011 WL 4470233, at *7.  Further, clearly established law should not be defined at a high level of generality.  *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004).  To determine whether the law was clearly established, the Court looks first to Supreme Court and then to Fifth Circuit precedent.  *See Pearson*, 555 U.S. at 244.

> 1.  <u>Warrantless Searches</u>

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

11

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  To determine whether a search is reasonable under the Fourth Amendment, the Court "examin[es] the totality of the circumstances." *Samson v. California*, 547 U.S. 843, 848 (2006) (citing *United States v. Knights*, 534 U.S. 112, 118 (2001)).  The Court must evaluate "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (citing *Knights*, 534 U.S. at 118-19).

It is a basic principle of Fourth Amendment law that warrantless searches of a person's home are presumptively unreasonable unless the person consents, or probable cause and exigent circumstances justify the search. *See Payton v. New York*, 445 U.S. 573, 590 (1980)("[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."); *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001) ("A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment").  Here, plaintiffs assert that they did not consent to the search of their home and that the officers did not

12

present a search warrant.  Further, the defendants do not
identify any exigency that would permit dispensing with the
warrant requirement and subjecting plaintiffs to a warrantless
search.  Accordingly, as alleged, the warrantless search of
plaintiffs' home was unreasonable and constituted a violation of
their clearly established Fourth Amendment rights.

The next question becomes whether a reasonable officer could
have believed the warrantless search of plaintiffs' home to be
lawful in light of clearly established law and the information
the searching officers possessed.  *See Anderson v. Creighton*, 483
U.S. 635, 641 (1987) (finding the relevant inquiry to determine
qualified immunity to be "whether a reasonable officer could have
believed Anderson's warrantless search to be lawful, in light of
clearly established law and the information the searching
officers possessed.").  The complaint indicates that the reason
the defendants searched the Carters' home was to apprehend Erin
Carter, Mr. and Mrs. Carter's son and a parolee, for a parole
violation.

Parolees and probationers "do not enjoy the absolute liberty
to which every citizen is entitled, but only ... conditional
liberty properly dependent on observance of special
restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987).
On the continuum of state imposed-punishments, "parolees have
fewer expectations of privacy than probationers, because parole

13

is more akin to imprisonment than probation is to imprisonment."[5]
*Samson*, 547 U.S. at 850.  The Supreme Court has held that a
warrantless non-consensual search of a probationer's residence on
the basis of a reasonable suspicion does not violate the Fourth
Amendment.  *Id.* (upholding a warrantless non-consensual search of
a probationer's home on less than probable cause when a state
regulation authorized warrantless searches by probation officers
upon reasonable suspicion); *see also Knights*, 534 U.S. at 114
(upholding a warrantless non-consensual search of a probationer's
home based on reasonable suspicion when the probationer agreed to
searches as a condition of probation); *United States v. Keith*,
375 F.3d 346, 347 (5th Cir. 2004) (upholding a warrantless non-
consensual search of a probationer's home based on reasonable
suspicion when neither a state regulation nor a condition of
probation specifically authorized the search).  In *Scott*, the
Fifth Circuit explained that a reasonable suspicion in this
context means that the parole officer "be able to point to
specific and articulable facts that, taken together with rational
inferences from those facts, reasonably warrant a belief in the
conclusion...that a condition of parole has been or is being
violated."  *Scott*, 678 F.2d at 35.  The search at issue here,

---

[5]      The Fifth Circuit has opined that the restrictions on
liberty imposed in connection with parole and probation are
related and "perhaps constitutionally identical".  *United States
v. Scott*, 678 F.2d 32, 33 n.1 (5th Cir. 1982).

however, was not a search of the parolee's (Erin Carter) home, but the home of his parents.  The defendants do not assert that they believed the plaintiffs' home to be Erin Carter's residence. The plaintiffs, on the other hand, allege that the officers knew that Erin Carter did not live in their home.  In their complaint, plaintiffs allege that their son does not live with them and has not lived with them for over a year.  They assert that Erin Carter has his own residence in Reserve, Louisiana.  Finally, plaintiffs contend that the officers knew that their son did not live with plaintiffs because the LDPSC monitored their son with an electronic device, and all visitations and inspections since the monitoring started occurred at Erin Carter's residence in Reserve, Louisiana.  In the absence of any indication that the officers reasonably believed that the parolee lived in the plaintiffs' home, the Court will not analyze the search as if the parolee in fact lived there.  The plaintiffs are not parolees, and they "cannot be subjected to the same burdens upon their privacy, and the departures from the usual warrant and probable cause requirements allowed with respect to parolees are not justified for [them]."  *Moore v. Vega*, 371 F.3d 110, 116 (2d Cir. 2004) (holding that officers' warrantless entry into homeowner's residence to search for an absconded parolee violated the homeowner's Fourth Amendment rights, but that because the officers possessed information that made it reasonable for them

15

to believe they were conducting a lawful search of a parolee's residence, they were entitled to qualified immunity); *Steagald v. United States*, 451 U.S. 204, 220 (1981) (holding that officials may not enter a third-party's home to locate the subject of an arrest warrant unless they also hold a search warrant for the home); *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) ("Nothing in the law justifies the entry into and search of a third person's house to search for the parolee"). Therefore, the Court finds that, the officers' warrantless search of the plaintiffs' home, as alleged in the complaint, was not objectively reasonable. Accordingly, plaintiffs have stated a claim against Officer Scarborough in his individual capacity.

## 2. Supervisory Liability of LeBlanc

Plaintiffs do not allege any direct involvement by LeBlanc in the conduct that caused plaintiffs' alleged deprivations. Rather, plaintiffs seek to hold LeBlanc liable as a policymaker for the department and supervisor of the officers who conducted the allegedly unlawful search. A supervisory official is not liable under Section 1983 for the actions of subordinates on a theory of vicarious liability. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (holding that the city police chief was entitled to qualified immunity because the plaintiff did not show a failure to train or supervise the officer). Such an official may be held liable only if plaintiffs demonstrate

16

that the official was personally involved in the constitutional violation or demonstrate a causal link between their actions and the alleged deprivation. *Id.*

Plaintiffs have alleged two theories of supervisory liability. First, they assert that LeBlanc was responsible for the training and supervision of the officers of the LDPSC and allege that he failed to adequately train and supervise them. Second, plaintiffs assert that LeBlanc formulates the policies of the LDPSC and allege that LDPSC's policies caused the violations of plaintiffs' rights.

To establish a claim under Section 1983 for failure to train or supervise, the plaintiff must show that: (1) the supervisor failed to train or supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005). "'[D]eliberate indifference' is a stringent standard of fault requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (holding that district attorney's office was not liable for failure to train because the need for training regarding *Brady* did not fall within *Canton*'s single-incident liability exception to the requirement of showing a pattern of violations) (quoting *Bd. of Cnty. Comm'rs of Bryan*

17

*Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability...'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

To establish deliberate indifference for purposes of failure to train, it is "ordinarily necessary" to demonstrate a pattern of similar violations. *Id.* (quoting *Bryan Cnty*, 520 U.S. at 409); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) ("a plaintiff usually must demonstrate a pattern of violations"); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.") (internal citations omitted); *but see Canton*, 489 U.S. at 390, n. 10 (hypothesizing that the consequences of failing to train could be so patently obvious that a city could be liable under Section 1983 without proof of a pattern of violations). If policymakers continue to follow "an approach that they know or should know has failed to prevent tortious conduct by employees[, that continued adherence] may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger []liability." *Connick*, 131 S.Ct. at 1360 (quoting *Bryan Cnty*, 520 U.S. at 407). When a plaintiff does not "establish

18

deliberate indifference, the court need not address the other two prongs of supervisor liability." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Estate of Davis*, 406 F.3d at 382).   In order for liability to attach based on a claim of inadequate training, the plaintiff must allege with specificity how a particular training program is defective.  *Roberts*, 397 F.3d at 293.

To state a claim against LeBlanc for failure to train or failure to supervise, plaintiffs must allege that LeBlanc had subjective knowledge of a serious risk of harm.  *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, (5th Cir. 2005) (explaining that to prevail on a motion to dismiss, the plaintiffs were required to allege that the supervisor "had subjective knowledge of a serious risk of harm to the patients.").   Plaintiffs fail to do so.   Accordingly, they have not shown that LeBlanc acted with deliberate indifference.   Plaintiffs do not make specific allegations regarding the inadequacies of the LDPSC's training program and point to no pattern of violations or deficiencies in the training program.   Plaintiffs simply make a general allegation that the policies and customs of the LDPSC fail to "ensure adherence to citizens' constitutional rights" and authorize a culture in which the officers expect that their actions will not be monitored.   This is not enough to allege that LeBlanc had knowledge of a risk of harm and therefore acted with

19

deliberate indifference.  Although a court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious", plaintiffs allege no facts that would support such an inference.  *Id.* (citing *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004).  As plaintiffs fail to allege deliberate indifference, the Court need not address the other elements of supervisor liability.  *See Goodman*, 571 F.3d at 396 ("[B]ecause [plaintiff] has not shown deliberate indifference, we need not discuss the remaining prongs of supervisor liability.").

Plaintiffs' also seek to hold LeBlanc liable as a supervisor on the grounds that he formulates the policies of the LDPSC and those policies directly caused the violations of plaintiffs' rights.  An official may be liable when enforcement of a policy or practice results in a deprivation of federally protected rights.  *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998).  In their complaint, plaintiffs allege that the following policies of the LDPSC caused their deprivation of rights: (1) failing to ensure adherence to citizens' constitutional rights; (2) failing to properly screen their officers before hiring; (3) approving a culture in which the personnel have an expectation that their actions will not be monitored and that their misconduct would not be investigated;

and (4) failing to hold supervisory officers responsible for misconduct.

None of the policies plaintiffs cites in their complaint states a claim against LeBlanc.  First, the Fifth Circuit has explicitly held that the failure to establish policies ensuring the protection of constitutional rights is not an adequate basis for supervisor liability under Section 1983.  *See Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981) ("[A] supervisory official c[an] not be held liable for failing to adopt policies to prevent constitutional violations, but c[an] be held liable if he affirmatively adopt[s] policies which [a]re wrongful or illegal and which caused the alleged deprivation of constitutional rights.").  Second, plaintiffs assertions that the LDPSC fails to properly screen its officers before hiring, approves a culture in which the officers expect that their actions will not be monitored, and fails to hold supervisory officers responsible for misconduct are wholly conclusory and devoid of factual support.  The Court acknowledges that at the motion to dismiss stage, it is difficult for a plaintiff to provide proof of an unconstitutional policy.  But, plaintiffs must at least set forth sufficient facts to raise their right to relief above a speculative level.  Plaintiffs do not provide any factual allegations beyond a bare assertion of the existence of a policy at a high level of generality.  Further, plaintiffs fail

21

to allege a causal connection between these policies and the asserted deprivations of their constitutional rights.

Because the Court finds that plaintiffs fail to state a claim against LeBlanc in his individual capacity, an analysis of his defense of qualified immunity is unnecessary. "Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman*, 571 F.3d at 396 (not reaching the qualified immunity defense when the plaintiffs did not state a claim under Section 1983).

### C. State Law Discretionary Immunity

Louisiana law confers immunity from suit upon state officers when the allegations are predicated "upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful duties." La. Rev. Stat. § 9:2798.1. Here, however, plaintiffs have not asserted any state law claims. Rather, their complaint alleges causes of action under Section 1983 exclusively. "[C]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983[ ] cannot be immunized by state law..." *Martinez v. California,* 444 U.S. 277, 284 n.8 (1980) (finding it "clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state

22

courts") (citing *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir. 1973) (finding that the district court erroneously relied on the Illinois Tort Act because the immunity claim raised a question of federal law; *see also Bayou Fleet Partnership, LLC v. St. Charles Parish*, 2011 WL 2680686, at *6 (E.D. La. Jul. 8, 2011) (granting plaintiff's motion to strike defendant's state law discretionary immunity defense because plaintiff did not assert state law claims). Because the plaintiffs' claims arise under federal and not state law, the defendants are not entitled to state law discretionary immunity.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss the claims against LeBlanc in his official and individual capacity and the claims against Officer Scarborough in his official capacity. The Court DENIES defendants' motion to dismiss the claims against Officer Scarborough in his individual capacity. The Court grants plaintiffs leave to amend their complaint to state a claim against LeBlanc in his individual capacity.

New Orleans, Louisiana, this 8th day of December, 2011.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

23