UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDDIE CARTER, ET AL.                      CIVIL ACTION


VERSUS                                    NO: 11-1401


ST. JOHN BAPTIST PARISH                   SECTION: R(2)
SHERIFF'S OFFICE, ET AL.



**ORDER AND REASONS**

Before the Court is defendant Officer Michael Scarborough's
motion for summary judgment.[1]  Because there is an issue of
material fact as to whether plaintiffs consented to Officer
Scarborough's entry of their home, the Court DENIES defendant's
motion.


**I.   BACKGROUND**

This case arises from an incident that occurred on June 14,
2010 at the home of the plaintiffs, Eddie and Connie Carter,
located at 3009 Essex Lane in La Place, Louisiana.  Beginning on
May 15, 2007, plaintiffs' son, Erin Carter, was a parolee under
the supervision of the Louisiana Department of Public Safety and
Corrections, Division of Probation and Parole ("P&P").  On April
27, 2010, while on parole, Erin Carter was arrested in Jefferson
Parish for possession of/dealing a firearm, illegal carrying of

---

[1]   R. Docs. 43.

weapons, possession of and possession with intent to distribute marijuana, possession of and possession with intent to distribute heroin, and possession of and possession with intent to distribute crack cocaine.  Erin Carter was arrested with another convicted felon.  Following this arrest, Erin Carter's parole officer, Michael Scarborough, requested that the Sheriff's office detain Erin Carter as a parole violator.  Erin Carter, however, posted bond, and the Sheriff's Office released him.

On May 10, 2010, the parole board issued an arrest warrant for Erin Carter for violating his parole.  Between that date and June 14, 2010, Erin Carter did not contact his parole officer or surrender to authorities.  On the evening of June 14, 2010, twelve officers of the Donaldsonville District of P&P, supported by detectives and deputies of the St. John Parish Sheriff's Office and the St. James Parish Sheriff's Office, conducted a warrant sweep.  The purpose of the sweep was to execute outstanding arrest warrants for seventeen individuals who violated their probation or parole conditions.  One of the individuals sought was Erin Carter.

The P&P officers attempted to execute the arrest warrant for Erin Carter at his residence, 1502 Delta Road, LaPlace, Louisiana.  After determining that Erin Carter was not home, Officer Scarborough informed the other officers that they should go to Erin Carter's parents' residence, the plaintiffs' home, to

2

check for him.  Officer Scarborough avers that he previously was able to locate his parolee at that residence, and indicates that this was the only other address for Erin Carter listed in Officer Scarborough's record during the period of his supervision. Accordingly, the officers proceeded to Eddie and Connie Carter's home at 3009 Essex Drive, LaPlace, Louisiana.

When the team arrived at the plaintiffs' home, they moved into the positions dictated by protocol.  Officer Scarborough, who was carrying a shotgun, stood at the edge of the property in order to secure the perimeter.  Officers John LeBlanc and Korey Landry, who were each carrying a semi-automatic pistol, approached the house and knocked loudly on plaintiffs' door. After this point, the accounts of plaintiffs and the P&P officers diverge.

Plaintiffs assert that they did not consent to the officers' entry and the officers did not present a search warrant.  Mr. Carter contends that when he looked out the window he could not see who was at the door because the light was dim.  When he opened the door, he "saw men in dark clothing with their guns drawn."[2]  The men walked toward him, and he, in turn, walked backward.  Mr. Carter asserts that the officers did not announce their presence, and he did not know that the men were officers until they were inside his home.  Plaintiffs aver that although

---

[2]     R. Doc. 56-1

they did not want these officers in their home and did not consent to the search, they were too afraid to ask the officers to leave.  According to plaintiffs, in the moments that followed the officers' entry, they "took control of the Carter's home"[3], searching the entire house, the backyard and the garage. Plaintiffs state that after the officers finished this search, Officer Scarborough "surprisingly"[4] entered their house and scolded the Carters for bailing their son out of jail. Plaintiffs further state that the officers did not leave their home until the plaintiffs mentioned that one of their sons is a lawyer.  Following the incident, the plaintiffs went to the hospital, assertedly traumatized by the events at their home. Mr. Carter was released early the next morning, and Mrs. Carter remained in the hospital for several days.

The P&P officers, on the other hand, assert that the Carters consented to the search of their home.  Officers LeBlanc and Landry indicate that when they knocked on plaintiffs' door, they clearly announced their presence.  Officer LeBlanc states that when Mr. Carter answered the door, Officer LeBlanc identified himself and explained that the officers were looking for Mr. Carter's son.  According to Officer LeBlanc, Mr. Carter told him that Erin was not at home but that "the team was welcome to come

---

[3]    R. Doc. 1.

[4]    R. Doc. 55-2 at 4.

4

in and look around"[5].  Officers LeBlanc and Landry both assert
that Mr. Carter consented to a search of his home.  Officers
LeBlanc and Landry further aver that they conducted an
exclusively visual search of the residence, the backyard and the
garage that lasted approximately ten minutes.  According to
Officers LeBlanc, Landry and Scarborough, Officer Scarborough did
not participate in the initial search.  Officer LeBlanc
indicates, however, that at some point during the search Mr.
Carter asked to speak to Officer Scarborough, whom he knew as his
son's parole officer.  When Officer LeBlanc informed Officer
Scarborough of Mr. Carter's request, Officer Scarborough entered
the plaintiffs' home to speak with Mr. Carter.

Officer Scarborough states that he spoke with Mr. and Mrs.
Carter at their kitchen table.  During this conversation, Mr.
Carter told Officer Scarborough that the charges stemming from
his son's arrest in Jefferson Parish had been dropped.  Officer
Scarborough states that he responded to this assertion by
informing Mr. Carter that he was not aware that this action had
been taken, but that Erin should turn himself in or have Eric
Carter, an attorney, send Officer Scarborough confirmation of the
change in the status of the charges.

On July 23, 2010, Officer Scarborough received a faxed
letter from Eric Carter explaining that Jefferson Parish dropped

--------------------------------------------------

[5]     R. Doc. 43-7 at 2.

the charges against Erin Carter along with the letter from the Parish confirming the information.  Officer Scarborough then requested that the arrest warrant be recalled and recommended that Erin Carter's parole be terminated unsatisfactorily.

On June 13, 2011, plaintiffs filed a complaint in federal court naming the following persons in their individual and official capacities as defendants: St. John the Baptist Parish Sheriff's Office, Sheriff Wayne Jones, four unknown officers of the St. John the Baptist Sheriff's Office, the Louisiana Department of Public Safety and Corrections, James M. LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections, Officer Michael Scarborough of the Louisiana Department of Public Safety and Corrections, and four unknown officers of the Louisiana Department of Public Safety and Corrections.  Plaintiffs assert violations of their constitutional rights under 42 U.S.C. § 1983.  Plaintiffs also assert Louisiana state law tort claims.[6]  Plaintiffs allege that they suffered various physical, mental and emotional harm as a result of the actions of these defendants and seek compensatory and punitive damages.

---

[6]     In an earlier Order, R. Doc. 30, the Court incorrectly stated that plaintiffs do not assert state law claims.  The Court now clarifies that plaintiffs' complaint does include allegations of state law violations.

6

On August 18, 2011, defendants LeBlanc and Scarborough filed a motion to dismiss.  The Court dismissed the claims against LeBlanc in his official and individual capacities and the claims against Scarborough in his official capacity.  The Court, however, denied defendants' motion to dismiss the claim against Scarborough in his individual capacity.  On May 15, 2012, the Court granted plaintiffs' motion to dismiss defendants Sheriff Wayne Jones and Officers John Doe 1-4.  Defendant Scarborough now moves for summary judgment.  Plaintiffs oppose the motion.

## II.  STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits

7

setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See,*

8

*e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

"If a party moves for summary judgment and asserts a defense of absolute or qualified immunity, the burden shifts to the other party to rebut it." *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007) (citing *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000) (explaining that once the movant asserts the affirmative defense of immunity, it is the plaintiff's burden to rebut that defense)).  In order to do so, the plaintiff may not simply rely on allegations in the pleadings, but must produce competent summary judgment evidence raising a genuine issue of material fact.  *Morales v. Boyd*, 304 Fed.Appx. 315, 318 (5th Cir. 2008).  Further, the movant can support its motion by relying solely on the pleadings.  *Disraeli v. Rotunda*, 489 F.3d at 631.


**III. DISCUSSION**

   *A. Officer Scarborough*

   1. Section 1983

   Title 42, United States Code, Section 1983 provides that every person, who, under color of state law, subjects, or causes to be subjected, any person within the jurisdiction of the United States "a deprivation of any rights, privileges, or immunities

under the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper preceding for redress ." 42. U.S.C. § 1983.  Qualified immunity protects government officials who perform discretionary functions from liability under Section 1983 "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 276 (5th Cir. 1995).

The qualified immunity analysis is a two-step process. First, a court must determine whether the plaintiff has alleged a violation of a constitutional right. *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995).  Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. *Id.*  The law is clearly established if "at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This is because "[e]ven law enforcement officials who 'reasonably but mistakenly [commit a constitutional violation]' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).  It is not necessary for there to

10

be a case directly on point to satisfy the clearly established requirement, "but existing precedent must have placed the constitutional question...beyond debate." *Id.* "A court must be able to point to controlling authority – or a 'robust consensus of persuasive authority' – that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011). Further, clearly established law should not be defined at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004). To determine whether the law was clearly established, the Court looks first to Supreme Court and then to Fifth Circuit precedent. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

First, the Court must consider whether plaintiffs identified a factual basis in the record for the conclusion that the defendant violated plaintiffs' constitutional rights. "[P]hysical entry of the home is the chief evil against which the ... Fourth Amendment is directed." *United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125 (1972). "Except in such special situations [consent or exigent circumstances], we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). "[A]ny physical invasion of the structure of the home, by even a

fraction of an inch, [is] too much." *Kyllo v. United States*, 533 U.S. 27, 37, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (internal quotation marks omitted).  Accordingly, a warrantless intrusion into a person's home is "presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify" the intrusion.  *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 420 (5th Cir. 2008) (citations and internal quotation marks omitted); *see also United States v. Mendez*, 431 F.3d 420, 429 (5th Cir. 2005) ("Consensual searches are established exceptions to the Fourth Amendment's warrant requirement.").

In this case, although the officers possessed an arrest warrant for Erin Carter, it is undisputed that the officers did not have a search warrant for plaintiffs' residence.  Nor does Officer Scarborough assert that his entry was justified on the basis of probable cause and exigent circumstances.  Rather, he contends that his entry was lawful because it falls within the consent exception to the warrant requirement.  Officer Scarborough asserts that plaintiffs not only consented to his entry, but that Mr. Carter specifically requested that Officer Scarborough enter his home.

To satisfy the consent exception, "the government must establish that consent to search was freely and voluntarily given and that the individual who gave consent had authority to do so."

12

*United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir.1997)
(citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir.
1995)).  Plaintiffs, in separate affidavits, assert that neither
Mr. nor Mrs. Carter consented to the entry of any officer into
their home.[7] They also deny that they invited any officer into
their home.[8]  They state that they were surprised when Officer
Scarborough entered their home.[9]  Officers Scarborough, Landry
and LeBlanc dispute this claim.  Each asserts that plaintiffs did
indeed consent to their entry.  At the summary judgment stage,
however, the court must "refrain[] from making credibility
determinations or weighing the evidence." *Delta & Pine Land Co.*,
530 F.3d at 398; *see also Sanchez v. Fraley*, 376 Fed.Appx. 449,
454–55 (5th Cir. 2010) (holding that differing factual accounts
preclude summary judgment); *Michalik v. Hermann*, 422 F.3d 252,
263 (5th Cir. 2005) (denying officers' motion for summary
judgment based on a qualified immunity defense when "the
arguments of...the defendants do not focus on the existence of
evidence, but instead on the weight that should be given to
it."). Plaintiffs' statements in their affidavits that they did
not consent to Officer Scarborough's entry are sufficient to
create a genuine issue of material fact as to whether Officer

---

[7]     R. Doc. 55-2 at 3, R. Doc. 55-3 at 3.

[8]     *Id.*

[9]     R. Doc. 55-2 at 4, R. Doc. 55-3 at 4.

13

Scarborough's entry failed to satisfy the consent exception to the warrant requirement. *See, e.g., Carpenter v. Bowling*, 276 Fed.Appx. 423, 425 (6th Cir. 2008) (upholding district court's denial of summary judgment because of issue of fact as to whether the officers had consent to enter plaintiff's home "even though it remain[ed] unclear what cognizable harm plaintiff suffered as a result"). Plaintiffs have therefore raised an issue of material fact on the first prong of the qualified immunity analysis, the lawfulness *vel non* of the warrantless entry into their dwelling.

The next question in the qualified immunity analysis is whether a reasonable officer could have believed the warrantless search of plaintiffs' home to be lawful in light of clearly established law and the information the searching officers possessed. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (finding the relevant inquiry in determining qualified immunity to be "whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed."). Here, the officers conducting a warrant sweep had an arrest warrant for Erin Carter, plaintiffs' son, but they did not have a search warrant for Mr. and Mrs. Carter's home. It is clearly established that absent exigent circumstances or consent, a law enforcement officer cannot legally search for the subject

14

of an arrest warrant in the home of third party, without first obtaining a search warrant.  *See Steagald v. United States*, 451 U.S. 204, 216, 101 S.Ct. 1642 (1981) (holding that absent exigent circumstances, law enforcement officers with an arrest warrant may not enter a third party's home to search for the subject of the arrest warrant).  Although Officer Scarborough asserts that Mr. and Mrs. Carter's home was "the only other address in [Erin Carter's] record"[10], Officer Scarborough does not assert that he believed Erin Carter lived in the plaintiffs' home at the time. Rather, Officer Scarborough indicates that the sweep team decided to go to plaintiffs' home because previously "when he had not seen or heard from Erin Carter...[he] was able to locate him at his parents' home or with his parents' assistance."[11]  Further, the Carters testified that Erin Carter lived at 1502 Delta Road in LaPlace, Louisiana, where his electronic monitoring took place, and did not live with them.  In the absence of evidence indicating that the officers reasonably believed that the parolee lived in the plaintiffs' home, the Court will not analyze the search as if Erin Carter, the parolee, in fact lived there.  The plaintiffs are not parolees, and they "cannot be subjected to the same burdens upon their privacy, and the departures from the usual warrant and probable cause requirements allowed with

---

[10]    R. Doc. 43-2 at 5.

[11]    *Id.*

respect to parolees are not justified for [them]." *Moore v. Vega*, 371 F.3d 110, 116 (2d Cir. 2004) (holding that officers' warrantless entry into homeowner's residence to search for an absconded parolee violated the homeowner's Fourth Amendment rights, but that because the officers possessed information that made it reasonable for them to believe they were conducting a lawful search of a parolee's residence, they were entitled to qualified immunity); *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) ("Nothing in the law justifies the entry into and search of a third person's house to search for the parolee").  A reasonable law enforcement officer in Officer Scarborough's position would have known that he could not enter plaintiffs' home, in the absence of exigent circumstances, without a search warrant or consent.  Accordingly, Officer Scarborough is not entitled to summary judgment on his assertion of qualified immunity.

### 2. State Law Claims

*a. Article I, Section 5*

Article I, Section 5 of the Louisiana Constitution, like the Fourth Amendment, protects against unreasonable searches and seizures.  *See* La. Const. Art. 1, §5; *State v. Surtain*, 31 So.3d 1037 ("Both the United States and Louisiana Constitutions prohibit unreasonable searches and seizures").  To the extent that plaintiffs' complaint asserts a claim for an unlawful search

16

under the Louisiana constitution, the same qualified immunity analysis that applies to plaintiffs' Section 1983 claims applies to this claim. *See Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir.2005) ("Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'") (quoting *Moresi v. Dep't of Wildlife and Fisheries*, 567 So.2d 1081, 1093 (La. 1990)). Because the Court found issues of fact concerning whether Officer Scarborough is entitled to qualified immunity on plaintiffs' Section 1983 claims, summary judgment is likewise inappropriate on plaintiffs' state constitutional law claims.

   *b. State Law Tort*

   Plaintiffs assert that the defendants in this suit, including Officer Scarborough, acted intentionally, or alternatively, negligently or with gross negligence. "[A] police officer,[12] in carrying out his authority to enforce laws, has a duty to act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for

---

   [12]   The duties of police officers apply equally to parole officers. *See* La. Rev. Stat. 15:574.8(A) ("Parole officers shall be deemed to be peace officers and shall have the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and police officers have in their respective jurisdictions.").

17

the well-being of those whom he is employed to protect." *Brooks v. City of Jennings*, 944 So.2d 768 (La. Ct. App. 2006) (citing *Keller v. City of Plaquemine*, 700 So.2d 1285 (La. Ct. App. 1997), *writ denied*, 706 So.2d 977 (La. 1998)).   An officer's duty of reasonableness extends to effecting an arrest and executing a search warrant.   *See Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 322 (La. 1994) (holding that duty of reasonableness in effecting arrest extends to approaching a suspect); *Hebert v. Adcock*, 55 So.3d 1007, 1013 (La. Ct. App. 2011)("A police officer owes a duty of reasonableness when executing a search warrant") (citing *Coutee v. Am. Druggist Ins. Co. of Cincinnati*, 453 So.2d 314 (La. Ct. App. 1984)).   To determine whether the officer acted reasonably, the Court must examine the totality of circumstances. *Mathieu*, 646 So.2d at 322-323 (reasonableness is determined based on "the totality of facts and circumstances in each case).   The reasonableness of Officer Scarborough's entry into plaintiffs' home turns, like his entitlement to qualified immunity, on the issue of consent.   Because the Court has determined that there is a genuine issue of material fact concerning whether plaintiffs consented to Officer Scarborough's entry, summary judgment on plaintiffs' state law tort claims is not warranted.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES Officer Scarborough's motion for summary judgment.

New Orleans, Louisiana, this 16th day of May, 2012.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

19